accede to the judgment of the majority of this court. I think the judgment below was right. I think the court in his charge properly analyzed the case, and I am constrained, therefore, to dissent from the majority opinion, for I think this case should have been affirmed.

## THE GUND REALTY CO. *v.* CITY OF CLEVELAND.

*Real property—Deeds conveying park for lot owners' benefit negatived dedication to public—Possession by city did not deprive lot owners of their interest therein—City acquiring land by adverse possession could appropriate for municipal purposes—Lot owners could not enjoin condemnation proceedings by municipality.*

1. Deeds setting aside part of certain tract as park for benefit of lot owners, and providing that it should be kept up as recreation ground at their expense, *held* to negative dedication thereof to public.

2. City taking possession of, and treating as public park for its inhabitants, land set aside by prior deeds to be used for walks and promenades by owners of lots in tract of which it was part, did not deprive them of their interests therein, in absence of showing that they failed to keep it up as required by deeds; their use thereof for such purposes not being inconsistent with city's use of it as park and recreation ground.

3. City acquiring by adverse possession land set aside by prior deeds as recreation ground for benefit of certain lot owners, but not dedicated as public park, could appropriate it, if necessary, for any municipal purpose recognized by statutes.

4. Only proper way to protect rights of, or compensate, property owners, for whose benefit certain land occupied by city was reserved by deeds as park, being by condemnation or appropriation proceedings wherein all are made parties, they have a complete and adequate remedy at

law, preventing them from obtaining injunction in court
of equity against appropriation of such land.

(Decided May 23, 1927.)

APPEAL: Court of Appeals for Cuyahoga county.

*Messrs. Mooney, Hahn, Loeser & Keough,* for
plaintiff.
*Mr. Carl F. Shuler,* director of law, for defendant.

VICKERY, J. This cause came into this court on
appeal from the judgment of the common pleas
court, and was heard here *de novo.*

From the record we learn that the Gund Realty
Company brought an action to restrain the city
of Cleveland from appropriating a certain parcel
of land on Lakeside avenue in the city of Cleveland.
It seems that the city had brought appropriation
proceedings in the insolvency court to appropriate
this parcel, which is a rectangular piece of land
north of Lakeside avenue, 198 feet wide and 364
feet long, and had made, we take it, the necessary
parties to such an appropriation proceedings, when
the Gund Realty Company, one of the parties to
that suit, brought its action to restrain the city
from further pursuit of the appropriation proceed-
ings in the insolvency court.

At the trial of that action, the court of common
pleas granted the injunction, and made permanent
the temporary restraining order theretofore issued.
An appeal was taken from that judgment to this
court, and, as already stated, we have heard the
case on the record and the evidence introduced in
the court below.

From this record we learn that about 80 or 90
years ago Lee Canfield and others were owners of

a certain tract of land embracing this rectangular parcel known as Clinton Park, and they allotted this parcel of land, running through it certain streets and laying out certain lots, and on the plat thus recorded this rectangular parcel of land was called Clinton Park, and reference was made to the reservations in the conveyance.

An examination of those conveyances in the record of this recorded allotment informs us that this rectangular piece of land known as Clinton Park was set aside for the benefit of the lot owners in that allotment, and it was provided that it should be kept up as a recreation ground for the benefit of those lot owners, and the cost and expense of keeping it up were to be taxed against the various lot owners in the allotment and collected through a trustee. That condition of things remained until about 35 or 40 years ago, when apparently the city of Cleveland, with or without any authority, seems to have taken possession of this property and treated it as a public park for the inhabitants of the city of Cleveland, establishing playgrounds and the equipment of playgrounds upon this tract, and supervising the amusements and plays that were held upon this so-called park. That condition of things, so far as we know, remains down to and until the present time, but in the last 15 or 20 years the character of the neighborhood has completely changed, and, instead of what was once a neighborhood, where this so-called Clinton Park would be beneficial as a recreation ground and playground for the children, it became the center of an industrial development, and the vicinity almost entirely around this property has been built up with industrial buildings, and industries are carried on in these various places, and the inhabitants that lived

around this tract and used it as a playground are no longer in the vicinity. So this rectangular strip has been permitted to reach a state of decay that makes it anything except a beautiful spot in the city of Cleveland. It is covered with paving stones and other materials for improvements of streets, and is more or less a dumping ground for the city's surplus supplies.

When the proceedings in the insolvency court were instituted the purpose was to take this property for the city for the purpose of erecting thereon buildings suitable for the city's use in storing supplies and other material to be used by the city, and the city attempted by these condemnation proceedings to appropriate whatever rights these people who owned the lots in this allotment above referred to might have in the premises, when, as already stated, this injunction suit was brought.

Now the question as to whether or not the city is entitled to maintain this condemnation proceeding or appropriation proceeding depends upon the purpose and scope of the original allotters of this allottment, in which this rectangular piece called Clinton Park was situated. It is argued with much force that, if this was dedicated to the public, the city of Cleveland would have no power to appropriate, and so the first question to be determined— and the important question to be determined—is, Was the action of the allotters when this allotment was laid out, and Clinton Park so called set aside for the benefit of the people who had purchased lots in that vicinity, a dedication to the public?

We have examined the authorities upon this proposition, and we think that, instead of this being dedicated to the public, the reservations contained in the deeds, which marked out the rights

of the parties interested in this tract and the extent of their rights, precludes the idea of a dedication to the public. As a matter of fact, the public had no interest or right in it. It was a private park laid out for the benefit solely of those who purchased lots in that allotment, and perhaps those bordering upon this rectangular piece called Clinton Park. I say it was in no sense a dedication to the public. The public as such would have no rights in it, and only the people who owned lots in that allotment could by right use this as a recreation grounds, and the idea excludes the object of a dedication to the public. It is unlike the public square in the city of Cleveland. It is unlike the other grounds that have been referred to by the plaintiff in its brief. We quite agree that, if there had been a dedication of this in the same sense that the public square was dedicated, or other pieces of ground have been dedicated, as was the case in the decisions that have been referred to, the public would have had such an interest in this property that it would not have been subject to condemnation or appropriation proceedings. We are well aware of the decisions of other courts, as well as of our own, that, where there has been a plat that sets aside a parcel of land for a street or for a park, without any reservation, there is a dedication such that the public would have an interest in it, although the public were not mentioned; but, in the instant case, instead of this being the fact, the exact reverse is the fact—that is, instead of it being a dedication, it was a reservation, reserving this piece of land for the use of those persons who had purchased lots in the allotment of which this was a part, which would be kept up, not by the public, but by the assessments raised

on these lots that were owned by these purchasers in this allotment. The record is silent, or at least we have not discovered, whether this was kept up by the property owners of this allotment or not, but we assume that it was. We assume it did not become a part of the city park property until the city, by squatting upon it, we might say, assumed control and direction over it. In such event the city could only acquire a right there by adverse possession, if it could be regarded as adverse possession, inasmuch as the property owners who had an interest in this parcel of land could still use it for the purpose for which it was reserved unto them. That reservation is clear. It was to be used for walks and promenades, and that could be done by these property owners consistent with the city's using it as a park and for recreation ground. I mention this because it would preclude the idea that the city had deprived these people of such interest in the land as they have had from the inception of this park.

But, assuming that the city had acquired it by adverse possession, there is nothing then in the law to prevent it appropriating it for other municipal purposes. It could appropriate it if necessary for any municipal purpose recognized by the statutes, the same as any other land, and the only situation which would prevent it from appropriating would be where the land had been dedicated to the public and had always been a public park, which situation we say did not exist.

Now, as already stated, the city by its so-called occupancy could not cut off the rights of the property owners for whose benefit this tract was reserved. Admitting, however, that the city could

maintain appropriation proceedings, admitting that the city could use this property for other purposes, then the proper and only way in which the rights of the parties interested could be protected or compensated would be by condemnation or appropriation proceedings, making all these people parties, and then the court having jurisdiction over this could properly assess the damages and fix the compensation that was due to each of these individuals; so we are constrained to come to the conclusion that the only and proper way in which this land could be handled by the city would be by appropriation proceedings in which the property owners interested would have a complete and adequate remedy at law, which would prevent them from going into a court of equity and obtaining an injunction.

There do not seem to be any reservations in the deeds or plat of this allotment which would cause a reversion of this land to the original grantors if it were abandoned for park purposes, but, however that may be, we think it would be safer if the heirs of those who established this recreation ground or park could be made parties, so that their interest could be safeguarded and protected by a judgment of the insolvency court.

We therefore come to the conclusion that the decree in this case must be for the city—that is, the petition must be dismissed and the injunction refused—and an entry may be drawn to this effect.

*Decree for defendant.*

SULLIVAN, P. J., and LEVINE, J., concur.